[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action for dissolution was commenced by the plaintiff (wife) in a complaint returnable on August 25, 1998, which was personally served on the defendant (husband) on July 31, 1998. Both of the parties have resided in this state for more than twelve months; therefore, the court has jurisdiction.
Many of the background facts are not in dispute. The parties were married in Danbury, Connecticut, on May 17, 1980. They were both born in Portugal, and at age twenty, after completing high school in Portugal, he emigrated to Danbury. She emigrated here from Portugal with her parents before he did and graduated from Danbury High School. After their marriage on May 17, 1980, they CT Page 15013 lived in a second floor apartment above her parents. Their daughter Jessica was born six years later on October 8, 1986, and she is now thirteen years old. During the first sixteen years of the marriage, the parties were both employed full-time, were able to save a part of their earnings, and trusted and respected each other.
She testified that the marriage began to deteriorate in 1996, when he would often come home late from work with signs of being under the influence of liquor, and would start arguments with her. She could never satisfy him, and he found fault with her parents. He became more verbally and emotionally abusive toward her. She testified that on July 9, 1998, after coming home late from work, and under the influence of alcohol, he became violent and abusive towards her. He brandished a large kitchen knife towards her, threatened to commit suicide, broke some furniture, then pushed her against a wall, and spit in her face. She called the Danbury police who arrested him for 3rd degree assault, threatening, resisting arrest and refusing to be fingerprinted. The next day she appeared in court and obtained a protective order against him. The court ordered him to enroll in the family violence program and which he completed successfully. He voluntarily attended about twelve therapy sessions with Dr. Robert Colen, a Danbury psychologist and, eventually, on July 9, 1999, all criminal charges were dismissed.
The defendant testified that beginning in 1996, she became more distant and less communicative towards him. Their arguments grew more emotional, and instead of discussing their problems and needs for intimacy, she became more argumentative. There was no evidence that the plaintiff ever physically abused him.
In balancing their contradictory testimony, the court finds the defendant's physical and emotional abuse towards the plaintiff contributed more to the breakdown of this marriage than did the plaintiff's behavior towards him, and the greater cause for the breakdown.
The court further finds this marriage has broken down irretrievably without a reasonable prospect for reconciliation; therefore, a decree of dissolution may enter pursuant to §46b-40(c)(1) of the Connecticut General Statutes.
On July 10, 1998, a day after the plaintiff obtained the protective order and while the defendant was in jail, the CT Page 15014 plaintiff withdrew all the funds deposited in their joint savings accounts at Union Savings Bank. She redeposited about $40,000 in an individual checking account with First Union Bank, and the balance of about $92,000 in Nutmeg Federal in trust for her daughter. These transfers were in technical violation of the automatic orders attached to the complaint. Section (1) of these orders prohibits the transfer or removal of funds from a joint savings account during the pendency of a dissolution action, except for usual and reasonable household expenses and attorney's fees for bringing the action. The court has reviewed the detailed accounting of the expenses paid by the plaintiff from the First Union bank checking account and finds $16,000 was paid to Attorney Diane Anderson for attorney's fees; $5000 to pay St. Joseph's School for Jessica's tuition; $2000 for her annual two week vacation to Portugal to visit her parents; and the $10,000 paid for usual household expenses over a fifteen month period. There is a balance of about $7270 in this account.
The court finds these expenses reasonable and permitted. The court shall not issue any sanctions or give any credits to the defendant for these payments.
The court has reviewed the financial affidavits of the parties, and has also considered their testimony as to income, expenses and their respective needs. In the plaintiff's financial affidavit, she lists her net weekly income at $343, with net weekly expenses of $896. Her total net assets are $219,923.
In the defendant's financial affidavit, his net weekly income is $1010 per week, and his expenses total $1461. His net assets are $215,057, about the same as hers.
The plaintiff advanced from the factory assembly line to becoming a customer representative with Branson Electric. At age thirty-nine, she has more than likely reached her maximum earning potential and now earns a gross annual salary of $25,417. She enjoys good health and is working full-time. The defendant also started at the bottom of the employment ladder working in a factory as an assembler, and has now advanced to director of manufacturing at Blackstone Industries earning a gross annual salary of $76,500. His responsibilities require him to travel on business throughout the world. He now earns about three times more than the plaintiff, and his future earning potential is much greater than hers. He is now forty-three years of age and in good health. CT Page 15015
While both parties list their total assets at about $215,000, there is a wide disparity in what they consider to be marital assets. The plaintiff claims that an apartment in Lisbon, Portugal, held jointly with the defendant, and that stock and bank accounts in Portugal held in the defendant's name, are marital assets worth a total of $86,222. These assets are not listed on his financial affidavit because he claims they are held in trust for his parents in Portugal. The court will discuss their respective claims.
1. APARTMENT IN PORTUGAL — $50,000 — (Plaintiff's Estimated Value).
From the testimony of the parties, and the exhibits in evidence, the apartment in Lisbon was purchased in 1993 for $15,000 while they were visiting their parents in Portugal, and title was taken in their joint names. It was undisputed that his parents have lived in this apartment for over forty years. The defendant was born in this apartment. He acknowledges they own a summer home outside of Lisbon, but testified this apartment has been their principal residence. His parents have never paid them rent, and they have made and paid for all repairs and maintenance expenses. The plaintiff claims the $15,000 purchase price was paid from joint funds they held in a Portugese bank account; however, she offered no evidence of a canceled passbook or check, or any other written proof of payment. Neither party established the fair market value by written appraisal or other. The plaintiff's testimony was weak and unconvincing. The court believes title was held by them in trust for his parents.
The defendant testified his parents' health is failing, and in 1993, they were both over seventy years old. They believed it was in their best interest for the parties to hold title in trust for them as testified to by the defendant. Their check for $3 million scudo was probative evidence that the money for the apartment came from their bank account. The court finds the defendant's testimony more credible than the plaintiff's and concludes that his parents are the beneficial owners of this apartment in Lisbon. Therefore, it is not to be considered as part of the marital assets.
2. STOCK IN PORTUGAL — $26,354 — (Plaintiff's Value as of August, 1998). CT Page 15016
3. ALL BANK ACCOUNTS IN PORTUGAL — $9,868.23 (Plaintiff's Value as of August, 1998).
The defendant testified the above stock and bank accounts were held in his name in trust for his parents. It was undisputed that the parties visited their parents in Portugal for two weeks every year during this marriage. They both have strong and loving relationships with them. The defendant's parents have total trust in him and believe he would be there to help them at any time.
On or about March 27, 1989, the defendant's parents deposited $1 million Portugese scudos (converts to $6000 U.S.) in the defendant's name in a Portugese bank. The defendant testified that these funds belonged to his father, and on that date, he signed an authorization whereby his parents could take back all the stock and bank accounts in Portugal at any time. The court believes his testimony that he never contributed any of his own money to this account.
In July, 1998, when his parents learned of this divorce, they took back the bank account and the stock. During the ten years that the defendant held title to the bank account and the stock, it had increased in value to $36,222.23. The computer printouts prepared by the defendant listing these assets as part of his net worth did not change the trust relationship he had with his parents. The court concludes these assets totaling $36,227.23 belong to his parents and shall not be considered as marital assets.
The court has listed to all the witnesses and reviewed all the exhibits in evidence. In addition, the court has taken into consideration all the criteria set forth in § 46b-82, the alimony statute; § 46b-81, the assignment of property and assets statute; § 46b-84, the child support statute; and § 46b-215 (b), the child support guidelines; § 46b-62, attorney's fees, as well as the relevant case law, including Scherr v, Scherr, 183 Conn, 366
(1981).
Accordingly, the following orders may enter.
 ORDERS
1. Legal and physical custody of the minor child shall be with the plaintiff. The defendant shall have visitation with the child on Saturday or Sunday afternoons between 1:00 and 5:00 CT Page 15017 p. m., and have telephone access to the child each day between 6:00 and 8:30 p. m. The defendant shall have vacation time with the child and give to the plaintiff reasonable notice concerning his choice of vacation times, more particularly, by May 1st of each year, in advance for summer vacation. The parties shall either alternate or share holiday time with the child, and the defendant shall give to the plaintiff reasonable notice concerning his proposed holiday arrangements.
The current relationship between the defendant and his daughter is strained and visitation has not been beneficial to either party. The defendant and daughter shall enter counseling with a goal of establishing a better relationship. The defendant shall be responsible for the cost of counseling. Visitation shall be expanded when the relationship has improved.
2. Defendant shall pay to the plaintiff, as child support, the sum of $184 per week, which is in accordance with the current guidelines. Child support shall be payable until the child is eighteen years of age, but if still in high school, support shall continue through high school graduation, but not beyond the age of nineteen years.
3. The defendant shall provide medical insurance coverage for the child, and in accordance with the child support guidelines, the defendant shall pay 60 percent and the plaintiff shall pay 40 percent of any unreimbursed medical and/or dental expenses incurred by the child.
4. The defendant shall pay to the plaintiff, as alimony, the sum of $226 per week, payable until the happening of the first of the following events: the death of either party, the plaintiff's remarriage, or statutory cohabitation pursuant to § 46b-86 (b), or eight years from this date, whichever occurs first.
An immediate wage withholding order shall enter pursuant to §46b-69 (a) as to the support and alimony obligation.
5. The parties shall forthwith transfer any interest they may have or sign any documents to the apartment in Lisbon, Portugal, or the stock and bank accounts in Portugal to the defendant's parents.
6. There are jointly held stocks, and plaintiff has separate stock with Emerson. All of said stock interests shall be divided CT Page 15018 equally between the parties. (Total estimated value $14,627.)
7. The defendant has a life insurance policy with Prudential in the face amount of $100,000. He shall designate the plaintiff as the beneficiary to cover the alimony obligation. He shall designate the child as the secondary and/or alternate beneficiary of said policy. Said designation for the child to continue until the child graduates from high school, but not beyond the age of nineteen years.
8. The defendant also has group life insurance available to him through his place of employment. The child shall be the designated beneficiary of the same until the defendant's obligation to pay child support has terminated.
9. The plaintiff has life insurance. She shall designate the child as the beneficiary until such time as the child graduates high school, but not beyond the age of nineteen years.
10. Each party shall be entitled to their respective motor vehicles and be responsible for any obligations concerning the same.
11. The defendant shall transfer to the plaintiff all his right, title and interest in the real property located (the marital residence) at 7 Tom Thumb Lane, Danbury, Connecticut. The plaintiff shall be responsible for all of the encumbrances on said property.
12. The plaintiff shall be entitled to the remaining furnishings and personal possessions presently located in the family home.
13. The defendant has IRA's and a 401K containing approximately $4844.93, and she shall be entitled to retain the same.
14. Plaintiff has a savings account at Nutmeg Federal containing approximately $92,368, and a checking account at First Union Bank of $7269, for a total of $99,638, which the parties shall divide equally ($49,819 each).
15. Each shall retain the cash value of their respective life insurance policies. CT Page 15019
16. In summary, the court has allocated the marital assets as follows:
WIFE HUSBAND
Real Estate — Danbury $195,000 0
Nutmeg Savings First Union checking account 49,819 $49,819
401K and IRA 4,844 84,540 (Total $899,638)
All stock in the U.S.A. 7,313 7,313 Cash Value Life Insurance 8,534 15,000
Checking/Savings 0 5,000 ________ ________ $265,520 $161,672
17. As previously stated in this memorandum, the court has considered all of the criteria in §§ 46b-81, 46b-82, and 46b-84
of the Connecticut General Statutes and believes that the defendant assaulted the plaintiff on July 9, 1998, giving her a civil cause of action for assault against him. This judgment shall extinguish and hold the defendant harmless for this assault or any other civil causes of action arising from this marriage.
Romeo G. Petroni, Judge Trial Referee